UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

S. BAXTER JONES,

                    Plaintiff,

v.

CITY OF DETROIT, et al.,

                    Defendants.

_____/

Case No. 2:17-cv-11744

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER
DENYING JOINT MOTION TO ADJOURN
DEADLINES AND STAY PROCEEDINGS [99]**

In December 2021, the Sixth Circuit affirmed the late Judge Avern Cohn's dismissal of the vicarious liability claims under Title II of the Americans with Disabilities Act and the Rehabilitation Act against the City of Detroit. *Jones v. City of Detroit*, 20 F.4th 1117, 1118. After the mandate returned, the Court denied Plaintiff Baxter Jones's renewed motion to alter or amend judgment. ECF 95. In the order, the Court noted that although "Plaintiff petitioned for a writ of certiorari, [] there are remaining claims that need a jury trial." *Id.* at 1780 (internal citation omitted). As a result, the Court's chambers worked with the Jury Department to schedule a jury trial beginning on August 2, 2022. ECF 96. The Court also ordered the parties to attend mediation with Magistrate Judge Elizabeth A. Stafford. ECF 95, PgID 1780.

Almost one month before the trial, and before the parties have mediated, the parties jointly moved to adjourn the trial and stay all proceedings until the Supreme

1

Court resolves the petition for a writ of certiorari. ECF 99.[1] For the following reasons, the Court will deny the motion and expects the parties to be prepared for trial in August.

## LEGAL STANDARD

The Court has the inherent power to stay proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). To resolve motions to stay while a petition for certiorari is pending, the party seeking certiorari must show "(1) 'a reasonable probability' that [the Supreme] Court will grant certiorari, (2) 'a fair prospect' that the Court will then reverse the decision below, and (3) 'a likelihood that irreparable harm [will] result from the denial of a stay.'" *Maryland v. King*, 567 U.S. 1301, 1302 (2012) (Roberts, C.J., in chambers) (alterations in original) (quoting *Conkright v. Frommert*, 556 U.S. 1401, 1402 (2009) (Ginsburg, J., in chambers)); *see, e.g.*, *Korthals v Cnty. of Huron*, No. 17-10319, 2020 WL 5258475, *3 (E.D. Mich. Sept. 3, 2020) (applying same factors).[2]

## DISCUSSION

The Court retains jurisdiction over the case until the Supreme Court grants certiorari. *United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 106 n.1 (1st Cir. 2016) ("[T]he mere act of filing a petition for certiorari does not

---

[1] Based on the parties' briefing, the Court will resolve the motion on the briefs without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

[2] The Court notes that the Supreme Court has, at times, used slightly different legal standards. *See* Trevor N. McFadden & Vetan Kapoor, *The Precedential Effects of the Supreme Court's Emergency Stays*, 44 Harv. J.L. & Pub. Pol'y 827, 839–41 (2021) (explaining that different formulations have emerged in Supreme Court orders addressing motions to stay).

deprive the district court of jurisdiction over the case."). Because the Court has jurisdiction to rule on the motion to stay, the Court will deny the motion for two reasons. One, the parties offered no legal analysis for why the Court should grant a stay. ECF 99, PgID 1792–93. To that end, the parties do not even appear to realize that there is a specific three-factor test to address a motion to stay pending resolution of a certiorari petition. *See id.* And two, the three-factor test favors denying the motion.

To begin, there is no reasonable chance the Supreme Court will grant certiorari. When reviewing a petition for a writ of certiorari, the Supreme Court considers whether "a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter." Sup. Ct. R. 10(a).

There is, admittedly, a circuit split on the issue. *Jones*, 20 F.4th at 1121 (detailing split). That said, there is also an emerging consensus among the Courts of Appeals after *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998), which appears to lessen the circuit split. *Jones*, 20 F.4th at 1121. Indeed, the only two Circuits that have split with the Sixth Circuit's holding did not even "acknowledge[]" or "grapple with *Gebser.*" *Jones*, 20 F.4th at 1121 (citing *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574–75 (5th Cir. 2002); *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001)). The Eleventh Circuit also recently agreed with the Sixth Circuit's holding based on *Gebser. Ingram v. Kubik*, 30 F.4th 1241, 1247 (11th Cir. 2021) (citing

*Jones*, 20 F.4th at 1118). In reality, the circuit split is not a well-entrenched division given that the Fifth and Ninth Circuits glossed over *Gebser*.

And statistically, there is no reasonable chance that the Supreme Court will grant the petition. The Supreme Court grants certiorari in only one percent of petitions filed. The Supreme Court 2019 Term, *The Statistics*, 134 Harv. L. Rev. 610, Table II.B (2020). Of the petitions that were granted, nearly all the private litigant petitions were represented by a small group of elite lawyers—most of whom were former United States Solicitors General. Adam Feldman, *A Very Exclusive Club: FormerSGs' Cert Success*, Above the Law (Mar. 2, 2021), https://bit.ly/3A9FHZL [https://perma.cc/W2WP-VU2V]. *See generally* Adam Feldman & Alexander Kappner, *Finding Certainty in Cert: An Empirical Analysis of the Factors Involved in Supreme Court Certiorari Decisions from 2001–2015*, Villanova Law Review, 61 Vill. L. Rev. 795, 816 (2016). Besides that, Plaintiff's petition lacks amici support. Docket, *Jones* (No. 21-1292); *see* Feldman & Kappner, *supra* at 806 ("Amicus briefs at the cert stage can, and often do, signal the importance of a case to the Court for the exact reason that non-parties engage in them without any guaranteed reward.") (footnote omitted). It follows that, from a statistical standpoint, there is far less than a "reasonable probability" the Supreme Court will grant certiorari. *Conkright*, 556 U.S. at 1402.

Next, the present petition is not the kind that raises "considered analysis of courts on the other side of the split" that warrants a reversal. *King*, 567 U.S. at 1303 (Roberts, C.J., in chambers). To be sure, the Fifth and Ninth Circuits have undermined their own holdings in more recent cases based on *Gebser*. *Jones*, 20 F.4th

at 1121 (citing *United States v. Cnty. of Maricopa*, 889 F.3d 648, 652 & n.2 (9th Cir. 2018); *Rodgers v. Smith*, 842 F. App'x 929, 929 (5th Cir. 2021) (per curiam)). Because every Court of Appeals that has examined the same question *and* considered *Gebser* has reached the same conclusion, there is no "fair prospect" the Supreme Court reverses the Sixth Circuit's holding. *King*, 567 U.S. at 1302 (Roberts, C.J., in chambers) (quotation omitted).

Last, "an applicant must demonstrate that *irreparable* harm will *likely* result from the denial of equitable relief." *Lucas v. Townsend*, 486 U.S. 1301, 1304 (1988) (Kennedy, J., in chambers) (emphases added). There is no irreparable harm here. If the Supreme Court were to grant certiorari *and* were to reverse the Sixth Circuit's holding, then, at worst, the parties would simply have to retry the case on one claim. At best, that claim would not survive a summary judgment motion. In contrast, the cases in which the Supreme Court found irreparable harm have involved far higher stakes.[3] Although there is a chance of inconvenience to the parties and judicial inefficiency, there is no risk of irreparable harm, and the last factor thus favors denying a stay.

---

[3] For example, *King*, 567 U.S. at 1302 (Roberts, C.J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.") (alteration in original) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351, (1977) (Rehnquist, J., in chambers)); *Hollingsworth v. Perry*, 558 U.S. 183, 196 (2010) (per curiam) ("While applicants have demonstrated the threat of harm they face if the trial is broadcast, respondents have not alleged any harm if the trial is not broadcast.").

## CONCLUSION

The present case is more than five years old, ECF 1, it has had two interlocutory appeals, ECF 71; 84, and now the parties want to delay trial based on a very small chance that the Supreme Court may grant certiorari, ECF 99. If the parties had wished to delay the case until after the Supreme Court resolved Plaintiff's petition, then the parties should have informed the Court of that well in advance of the Court's ruling on Plaintiff's Rule 60(b) motion, ECF 91.[4]

This is the second time that the parties have misrepresented their intentions to the Court. *See* ECF 95, PgID 1778 ("The parties represented that the second interlocutory appeal would 'materially advance the ultimate termination of the litigation.' That representation seems to have lacked accuracy given that Plaintiff now seeks to prolong the litigation with the present motion.") (citations omitted). Those misrepresentations are not picayune; the Court's chambers has worked tirelessly with the Jury Department to promptly schedule a trial to resolve the case. The August jury trial date is the best date that the Jury Department can provide to the Court until Summer 2023 at earliest given the Court's substantial criminal jury trial backlog. And, given the ninth-inning motion to stay, the Jury Department cannot merely slide another case into the August jury trial slot. Put differently, canceling the August jury trial does not simply affect Baxter Jones and the City of

---

[4] *See* ECF 89 (joint status report containing no mention of a stay); ECF 91 (Plaintiff's Rule 60(b) motion containing no mention of stay); ECF 92 (Defendant's response brief containing no mention of a stay); ECF 94 (Plaintiff's reply brief containing no mention of a stay).

Detroit—it affects other litigants who have waited years for a civil or criminal jury trial.

Finally, if the parties wish to seek a stay, they can take it up with Justice Brett Kavanaugh. *See* Sup. Ct. R. 22; *Hollingsworth*, 558 U.S. at 190. But a "single Justice will grant a stay only in extraordinary circumstances." *Whalen v. Roe*, 423 U.S. 1313, 1316 (1975) (Marshall, J., in chambers). That is because "[a] stay is an intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks and quotation omitted). And even if the parties could meet the high standard for a stay, relief is not a given because "[t]he conditions that are *necessary* for issuance of a stay are not necessarily *sufficient*." *Barnes v. E–Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1304 (1991) (Scalia, J., in chambers) (emphasis in original).

At bottom, obtaining a stay pending certiorari hinges on the "reasonable probability that the Supreme Court will grant certiorari," multiplied by whether there is "a fair prospect that the Court will then reverse the decision below." *King*, 567 U.S. at 1302 (Roberts, C.J., in chambers) (cleaned up). The odds are very low.

The Court will therefore deny the motion to adjourn. The parties are expected to mediate in good faith and be prepared for trial at the beginning of August.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the joint motion to adjourn deadlines and stay the proceedings [99] is **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: June 30, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 30, 2022, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager

8